IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUN 23 2010
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| UNC LEAR SERVICES, INC., et al., § | |
| Plaintiffs, § | |
| § | |
| v. § | NO. 5:04-CV-1008-RF |
| § | |
| KINGDOM OF SAUDI ARABIA, et al., § | |
| Defendants § | |

## MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING THE KINGDOM'S MOTION TO DISMISS LEAR'S COUNTERCLAIMS IN REPLY

BEFORE THE COURT are Defendants the Kingdom of Saudi Arabia and the Ministry of Defense and Aviation of the Kingdom of Saudi Arabia's (collectively the "Kingdom") Motion to Dismiss Lear's Counterclaims in Reply (Docket No. 243); and Plaintiffs UNC Lear Services, Inc. and Lear Siegler Services, Inc.'s (collectively "Lear") Response. The Court heard argument on this motion immediately prior to the commencement of the bench trial on June 14, 2010. The Court ruled from the bench, and GRANTED the Kingdom's motion.[1] The Court here enters its memorandum opinion in support of its oral ruling.

### I. BACKGROUND

Lear brought this case in 2004, alleging that the Kingdom breached its duties under contracts entered between the parties and additionally seeking non-contractual damages arising from the alleged conduct, such as unjust enrichment. Lear sought to pursue its claims against the Kingdom for alleged breaches of the F-5 Technical Support

---

[1] (Resolves Docket No. 243).

Program ("TSP") contract and the F-5 Spare Parts and Ground Equipment ("SPAGE") contract. The Kingdom previously sought to dismiss all claims on the basis of sovereign immunity, a view this Court rejected. The Fifth Circuit affirmed in part with respect to the SPAGE contract, but reversed in part with respect to the TSP contract. The Kingdom filed a motion to dismiss the claims that survived after the Fifth Circuit's opinion. After the Court ruled on this second motion to dismiss, Granting in Part and Denying in Part the motion, the Kingdom filed its Answer and Counterclaims on April 30, 2010. Lear argues that the Kingdom's counterclaims constitute a waiver of the Kingdom's sovereign immunity. Based upon this belief, Lear reasserted its TSP claims against the Kingdom in Lear's Answer and Counterclaims to the Kingdom's Answer. Specifically, Lear seeks to recover for (1) Breach of the TSP contract; (2) Intentional Interference with Commercial Relations by calling for payment on the TSP performance bond; (3) Conversion due to an allegedly improper decision to call for payment on the TSP Performance bond; (4) Violation of the Texas Theft Liability Act by wrongfully calling for payment on the TSP performance bond; (5) Unjust Enrichment or Quantum Meruit due to an alleged failure to pay for services tendered by Lear pursuant to the TSP contract; and (6) a Declaratory Judgment with regard to the parties' rights under the TSP contract.

The Kingdom now asks the Court to dismiss these reasserted claims. The Kingdom argues that (1) it did not waive immunity under the Foreign Sovereign Immunity Act ("FSIA") § 1605; (2) it did not waive immunity under FSIA § 1607; (3) The law of the case doctrine precludes Lear's ability to assert the counterclaims; (4) Lear's counterclaims are improper under the Federal Rules of Civil Procedure and

2

this Court's scheduling order; and (5) FSIA § 1606 bars recovery of punitive damages against a foreign state. Lear disputes all five of these points.

In addition to the assertion of TSP contract-related issues as counterclaims, Lear contends that it can raise the TSP contract claims as affirmative defenses in order to seek an offset from any award in favor of the Kingdom. The Kingdom disputes this assertion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

## III. DISCUSSION

### A. FSIA § 1605

FSIA § 1605(a)(1) provides for the waiver of a foreign state's sovereign immunity where "the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign sovereign may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). The Kingdom has clearly not explicitly waived immunity. But Lear argues that the scope of the Kingdom's reply implicitly waived immunity. Lear's position is that a foreign state implicitly waives its sovereign immunity whenever it asserts a counterclaim. The Kingdom disagrees and contends that a counterclaim may never be viewed as an implicit waiver of sovereign immunity.

> In *Rodriguez v. Transnave Inc.*, the Fifth Circuit explained that:
>
> The legislative history of the FSIA states that implicit waivers are ordinarily found in three situations: (1) a foreign state agrees to arbitration in another country; (2) the foreign state agrees that a contract is governed by the laws of a particular country; or (3) the state files a responsive pleading without raising the immunity defense. . . . The implicit waiver clause . . . has therefore been narrowly construed; courts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended to do.

8 F.3d 284, 287 (5th Cir. 1993). The *Rodriguez* decision strongly cautions against finding an implicit waiver of sovereign immunity. Plaintiffs cite *First Nat'l City Bank v. Barco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) for the proposition that seeking a claim in a United States court constitutes implicit waiver of sovereign immunity. *First Nat'l City Bank* does not stand for this proposition—it pertains to the

4

waiver of sovereign immunity under § 1607, *see id.* at 630 (finding waiver of sovereign immunity under FSIA § 1607).

Lear is correct, though, in its assertion that courts have found an implicit waiver where a foreign state initiated a suit in American court. *See Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1206 (9th Cir. 2003) ("[A] foreign country's use of United States courts can be sufficient to trigger a § 1605(a)(1) implied waiver under *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992)."); *see also Restatement (Third) of Foreign Relations Law* § 456 (1989) ("[I]nitiation by a state of an action in a court in the United States is a waiver of immunity from jurisdiction to adjudicate."). But it appears that no U.S. court has ever found that the mere assertion of counterclaims is an implicit waiver of sovereign immunity. Moreover, the soundness of the Ninth Circuit's opinion in *Blaxland* and *Siderman de Blake* has been questioned by the Second Circuit. *See Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 202 (2d Cir. 1999) ("The implicit theory of *Siderman* is new and dubious, and seems to be that a foreign state forfeits immunity with respect to matters related to a scheme of persecution if it advances that scheme by bringing suit in the United States."). For the above reasons, the Court finds that the Kingdom's counterclaims are not an implicit waiver of sovereign immunity under 28 U.S.C. § 1605(a)(1).

**B.    FSIA § 1607**

FSIA § 1607 applies "[i]n any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim." 28 U.S.C. § 1607. Sub-

5

section (b) waives sovereign immunity for any counterclaim that "aris[es] out of the transaction or occurrence that is the subject matter of the claim of the foreign state." *Id.* § 1607(b). Sub-section (c) waives sovereign immunity for any other counterclaim, but only as a set off. *Id.* § 1607(c). The Kingdom argues that this section does not apply, because an "action brought by a foreign state" indicates the section only applies if the foreign state initiated the suit as a plaintiff, a contention that Lear vigorously objects to.

"The meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221 (1991)). There is not any authority from the Fifth Circuit—or any other circuit—directly on point to the precise issue in this motion: whether "bringing an action" in the context of FSIA § 1607 is limited to the initiation of a lawsuit, or if it includes counterclaims seeking affirmative relief. Both parties cite to case law which interprets the meaning of bringing an action in favor of their interpretation in this case. *Compare, e.g., Jonathan H. v. The Souderton Area Sch. Dist.,* 562 F.3d 527, 530 (3d Cir. 2009) ("[A] defendant does not 'bring an action' by asserting a counterclaim") *with, e.g., Penn Elastic Co. v. United Retail & Wholesale Employees Union,* 792 F.2d 45, 47 (3d Cir. 1986) (finding "action" to include counterclaims in an ERISA case).

The Court finds that, as a general rule, "bringing an action" means initiating a lawsuit, not filing a counterclaim. The Court finds particularly persuasive the *Jonathan H.* court's explanation of the general meaning of the phrase "bring and action:"

> The phrase "bring an action" is defined as "to sue; institute legal proceedings." *Black's Law Dictionary* (8th ed. 2004). Therefore, an action is "brought" when a plaintiff files a complaint, which is the first step that

6

> invokes the judicial process. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *id.* Advisory Committee Note ("The first step in an action is the filing of the complaint."). Unlike the proactive nature of a complaint, a counterclaim is reactive because it is filed only after the plaintiff has initiated the case by bringing a civil action. Indeed, a counterclaim is a "claim for relief asserted against an opposing party after an original claim has been made." *Black's Law Dictionary* 353 (8th ed. 2004); *see also* 3 James Wm. Moore, et al., *Moore's Federal Practice* § 13.90(2)(a), at 13-79 (3d ed. 1997) ("Only defending parties may assert counterclaims."). Counterclaims are therefore "generally asserted in the answer" to a previously filed complaint. Moore, supra, § 13.92, at 13-88.

*Jonathan H.*, 562 F.3d at 529-30. This view of the phrase "action" is the same within the Fifth Circuit. *See Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1347 (5th Cir. 1991) (finding no distinction between the definition of the terms "action" and "case," and observing that "'[i]n federal practice the terms refer to the same thing, *i.e., the entirety of a civil proceeding.*" (emphasis added) (quoting *Nolan v. Boeing Co.*, 919 F.2d 1058, 1066 (5th Cir. 1990)). More importantly, this interpretation of "action" was made in the context of interpreting the removal of "actions" under FSIA § 1603(a). *See* Nolan, 919 F.2d at 1064 (explaining that FSIA § 1603(a) permitted the removal of any civil action).

The plain language of FSIA § 1607 shows no indication of an intention to depart from the definition of "action" generally or the definition of "civil action" as interpreted by the Fifth Circuit in *Nolan*. In particular, the Court finds instructive the repeated use of the term "action" in the legislative history: "Section 1607 applies to counterclaims against a foreign state which brings an *action* or intervenes in an *action* in a Federal or State court." H.R. Rep. 94-1487, at 23 (1976) (emphasis added). The second use of the term action indicates that Congress viewed the term "action" to refer to the entire case,

7

not to individual claims or counterclaims. Accordingly, the Court finds that the Kingdom has not waived its sovereign immunity by asserting counterclaims. Unlike the foreign states in the cited FSIA § 1607 waiver cases, the Kingdom has not sought to invoke federal jurisdiction. In fact, the Kingdom has vigorously contested jurisdiction at every step of the litigation. The Court finds FSIA § 1607 to not require an unwilling foreign sovereign to be forced into U.S. court as a defendant and then be barred from asserting its counterclaims unless it waives any remaining sovereign immunity.

C.  **Law of the Case**

Even if the Court is incorrect, and the Kingdom has waived its sovereign immunity through the assertion of counterclaims, the Court finds that the law of the case doctrine prevents the Court from considering the TSP contract claims. In rejecting this Court's exercise of jurisdiction over the TSP contract claims, the Fifth Circuit found that "[W]e do not have jurisdiction over Lear's claim for breach of the TSP contract." *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 217 (5th Cir. 2009). Lear argues that this ruling was limited to the question of whether this Court possessed jurisdiction over the Kingdom pursuant to FSIA § 1605(a)(2). *See* 28 U.S.C. § 1605(a)(2) (providing that a foreign state may not exercise sovereign immunity in an action based upon commercial activity with a sufficient relationship to the United States). The Court disagrees. Whatever the procedural posture of the case upon appeal to the Fifth Circuit, the Court finds that the Fifth Circuit's holding to be that this Court does not possess subject matter jurisdiction over any claims arising from the TSP contract. This Court may not reexamine an issue already decided on appeal. *See Fuhrman v. Dretke*,

442 F.3d 893, 896 (5th Cir. 2006) ("The law of the case doctrine provides that 'an issue of law or fact decided on appeal may not be reexamined [] by the district court.'" (quoting *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998))). Accordingly, this Court finds that it is bound by the Fifth Circuit's decision and thus does not possess jurisdiction over the TSP law claims.

### D.   Federal Rules of Civil Procedure

Because the Court finds that the Kingdom has not waived its sovereign immunity and that the Court lacks jurisdiction due to the law of the case doctrine, the Court does not need to reach the question of whether the assertion of these counterclaims by Lear was procedurally proper.

### E.   Punitive Damages

Lear argues that because the Kingdom is asserting punitive damages against it, that Lear is entitled to assert punitive damages as an offset against Lear. However, in Lear's Opposition to the Kingdom's Motion to Dismiss Plaintiffs' Counterclaims in Reply, Lear decided to withdraw its claims for punitive damages. Accordingly, the Court DENIES AS MOOT the Kingdom's motion with regard to Lear's claim for punitive damages.

### F.   Affirmative Defenses

Lear argues that a claim for an offset or set off is an affirmative defense that they are permitted to raise in defense of the Kingdom's counterclaims. The Kingdom disagrees and argues that an offset is not an affirmative defense. Both parties cite precedent in support of their argument. *Compare, e.g., Giles v. Gen'l Elec. Co.*, 245 F.3d

474, 494 n.36 (5th Cir. 2001) ("Our caselaw supports [the plaintiff's] contention that an offset indeed is an affirmative defense."), *with Capital Concepts Props. v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (finding that a set off is "a form of equitable counterclaim.").

Although a claim for offset or set off may be viewed as an affirmative defense in other contexts, the Court finds that in actions involving foreign states, an offset claim may only be made if permitted under the FSIA. The intent of FSIA is to allow foreign states immunity from the burdens of litigation, not just immunity from liability. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) (quoting *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("[S]overeign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits" (citations omitted))). Allowing a party to assert an unrelated claim as an affirmative defense would broaden the litigation and subject a foreign state to litigation over claims to which the foreign state was immune.

The FSIA itself supports this view, as it provides for offset claims in certain circumstances—FSIA § 1607(c) allows offset claims where the foreign power brings an action. 28 U.S.C. § 1607(c). The Court finds that characterizing an offset claim as an affirmative defense does not permit a party to circumvent FSIA § 1607(c). *See* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."). Accordingly, the Court will not permit Lear to assert its TSP claims as affirmative defenses to the Kingdom's counterclaims.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Kingdoms Motion to Dismiss Lear's Counterclaims in Reply.

IT IS SO ORDERED.

Signed this 23rd day of June, 2010.

                                          Royal Furgeson
                                          Senior United States District Judge